## Alvin DIAL v. STAR CITY PUBLIC HOUSING AUTHORITY

CA 82-316                                    648 S.W.2d 806

Court of Appeals of Arkansas
Opinion delivered March 30, 1983

*David J. Manley,* Legal Services of Arkansas, for appellant.

*Armstrong & Binns,* for appellee.

Tom Glaze, Judge. This appeal is from an unlawful detainer action and involves the notice that must be given a public housing tenant prior to his eviction. Appellee filed suit to evict appellant, alleging he violated the terms of the parties' lease. The trial court ordered appellant's eviction after finding he had breached the lease and had been afforded all notices, safeguards and hearings to which he was entitled. For reversal, appellant contends that his eviction was improper because appellee's actions failed to comport with both procedural due process and the grievance requirements established by the Department of Housing and Urban Development (HUD) in 1975. We agree and therefore reverse.

As early as 1955, the United States Court of Appeals for the District of Columbia held that a Public Housing Authority (PHA) could not evict a tenant without good cause, and, unlike private landlords, a PHA is subject to the requirements of due process of law. *See Rudder* v. *United States,* 226 F.2d 51 (D.C. Cir. 1955). In 1970, two other United States Courts of Appeal defined the scope of application of

the due process clause to the eviction procedures employed by PHAs. *Escalera* v. *New York City Housing Authority*, 425 F.2d 853 (2d Cir. 1970); *Caulder* v. *Durham Housing Authority*, 433 F.2d 998 (4th Cir. 1970). In *Caulder*, the Court, after holding that tenants of public housing are entitled to a hearing before they are evicted, adopted and applied those due process requirements set out in *Goldberg* v. *Kelly*, 397 U.S. 254 (1970), *viz.*:

> ... (1) timely and adequate notice detailing the reasons for a proposed termination, (2) an opportunity on the part of the tenant to confront and cross-examine adverse witnesses, (3) the right of a tenant to be represented by counsel, provided by him to delineate the issues, present the factual contentions in an orderly manner, conduct cross-examination and generally to safeguard his interests, (4) a decision, based on evidence adduced at the hearing, in which the reasons for decision and the evidence relied on are set forth, and (5) an impartial decision maker.

The *Rudder, Escalera* and *Caulder* decisions culminated in HUD's promulgation of certain regulations in 1975. 24 C.F.R. §§ 866-866.59. These regulations established the lease and grievance procedures that PHAs must follow and implement when a tenant disputes any PHA action (or inaction) involving its regulations or the tenant's lease. Interestingly enough, HUD's regulations are more detailed, extensive and broader in scope than the due process requirement elements mandated by any of the prior federal court decisions. For instance, in promulgating § 866.53 (d), HUD embraced all of the due process elements set out in *Goldberg* v. *Kelly, supra.* However, in addition, HUD provided that a tenant is entitled to an informal discussion or settlement of any grievance. 24 C.F.R. § 866.54.[1] In fact, such an informal discussion is a condition precedent to any

---

[1]Because HUD determined that the majority of grievances could be settled by informal conference, it required all tenant disputes must first be submitted to the informal procedure described in § 866.54. In sum, the tenant personally presents his grievance to the PHA office so the grievance may be discussed informally and settled without a hearing. After the discussion, the PHA must prepare a summary of the discussion, specify-

hearing given the tenant by a PHA. 24 C.F.R. § 866.55 (d). Once a hearing is required, HUD has provided not only for an impartial hearing officer to hear the dispute, but it also prescribed an alternate selection procedure in case the PHA and tenant cannot agree on the officer. 24 C.F.R. § 866.55 (b).

In the instant case, the appellee (PHA) failed to provide an informal conference to appellant. For seventeen years, appellant has resided in a housing project managed by appellee. Apparently, appellant caused no problems in the project until 1981. During this year, he became the subject of several complaints — most of which involved his son, Timmy. Other tenants in the project were the first to complain. They alleged that appellant permitted loud noises and drinking to occur in his apartment. Acting on those complaints, appellee, by letter dated May 1, 1981, notified the appellant that disturbances would not be tolerated, and if appellee received complaints against him again, appellee would ask him to vacate. The next complaint against appellant involved an old couch, lawnmower, TV and other items he had stored on his front porch. By letter dated August 20, 1981, appellee notified appellant that, contrary to appellee's earlier instructions, he had not yet removed these items, and it directed that he do so as soon as possible. In the same letter, appellee also asked if appellant's son, Timmy, was going to live in the apartment. Appellant subsequently removed the items, but nothing in the record reflects that the parties discussed Timmy. Finally, in October, 1981, project tenants again complained concerning disturbances from appellant's apartment. By letter dated October 26, 1981, appellee notified appellant that because of disturbances and his breach of paragraph 8 of the parties' lease, appellant's tenancy was terminated effective December 1, 1981.

In response to the October 26 letter, appellant went to appellee's project office and talked with its executive director, Robbie M. Hoyt. Hoyt informed appellant of his

ing the participants' names, meeting dates, proposed disposition of the complaints and reasons therefor and the procedure by which a hearing may be obtained. 40 Fed. Reg. 33, 402 (1975) (codified at 24 C.F.R. §§ 866.1-.59).

rights to a hearing involving the proposed tenancy termination, but there is no evidence that she made any efforts to informally discuss or resolve the matter to avoid a hearing or court litigation. Hoyt made no summary of her first meeting with appellant, nor did she comply with any of the other requirements mandated in HUD's informal grievance regulation, § 866.54. For this reason, we must reverse the trial court's decision upholding appellee's eviction of appellant.

In conclusion, we note appellee's noncompliance with HUD's regulation § 866.55 (b) which pertains to the selection of a hearing officer. Appellee's director conceded that she and the appellant could not agree on a hearing officer; therefore, appellee's Board of Commissioners unilaterally selected the officer. Instead, a hearing panel should have been appointed by the parties in accordance with the procedure delineated in § 866.55 (b). The parties did not specifically raise this issue on appeal, but we would be remiss in not mentioning it when, by doing so, we might avoid error in any future hearing or trial in this cause.

Reversed and remanded.